## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

JACQUELYNE JONES,

        **Plaintiff,**

v.

        **Case No. 12-CV-2681-DDC-TJJ**

JOHN MCHUGH, in his official
Capacity as Secretary of the
Department of the Army,

        **Defendant.**

## MEMORANDUM AND ORDER

      Jacquelyne Jones brings suit pro se against John M. McHugh, Secretary of the Department of the Army, for employment discrimination.  This matter comes before the Court on Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment (Doc. 18), Defendant's Motion to Strike Plaintiff's Reply to Defendant's Response for Summary Judgment (Doc. 62), and Plaintiff's Motion to Strike Defendant's Summary Judgment Evidence (Doc. 64).  For the reasons explained below, the Court grants Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment, denies Defendant's Motion to Strike Plaintiff's Reply to Defendant's Response for Summary Judgment, and denies Plaintiff's Motion to Strike Defendant's Summary Judgment Evidence.

### I.   Introduction

      In November 2006, Plaintiff Jacquelyne Jones started working as a civilian employee for defendant at the Combined Arms Center ("CAC") at Fort Leavenworth, Kansas.  Jones is a "black female"[1] over the age of 40.  On October 19, 2012, Jones filed her Complaint in this law-

---

[1] Doc. 58 at ¶ 5 ("Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment).

suit alleging that, starting in 2007 and continuing through 2011, she was the victim of numerous incidents of employment discrimination.  Specifically, Jones alleges that defendant discriminated against her based on her race, religion, national origin, gender, disability, age, and "non-military affiliation," in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.*, and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.*

Jones' district court Complaint contains only bare allegations of discrimination.[2]  However, Jones filed three formal complaints with the Department of the Army's Equal Employment Opportunity office [3] that describe defendant's allegedly discriminatory acts.  The Court will analyze each EEO Complaint in turn.

## II.  First EEO Complaint

Jones' First Formal EEO Complaint covers incidents that occurred between March and August 2007.  Jones first contacted the Department of the Army's EEO office on April 23, 2007.  On or about April 24, 2007, Major Suzanne Self, Jones' senior rater, received notice that an unnamed individual had filed a complaint of discrimination against defendant.  Self did not learn that Jones was the complainant until May 17, 2007.  On June 19, 2007, Jones filed her First Formal Complaint of discrimination with defendant's EEO office, alleging discrimination based on her race and sex and retaliation for contacting the EEO office.  Defendant seeks an order granting summary judgment on the claims brought in Jones' First Formal EEO Complaint.

---

[2] Doc. 1 at p. 3 ("In 2006, I became a victim of employment discrimination.  After engaging in protected activities (filing an EEO complaint and whistleblowing), I became the target of relentless retaliation that directly impacted my pride, person, career and finances.").

[3] Federal employees must file their formal complaint with their agency's equal employment opportunity office, not the Equal Employment Opportunity Commission like nonfederal employees.  29 C.F.R. § 1614.106.

**A.  Summary Judgment**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  *Anderson,* 477 U.S. at 247.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  *Id.* at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which [she] carries the burden of proof."  *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

"[W]e must view the record in a light most favorable to the [party] opposing the motion for summary judgment."  *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative.  *Anderson,* 477 U.S. at 249–50.  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251–52.

**B.  Preliminary Matters**

Before discussing the merits of defendant's Motion for Summary Judgment, the Court must first address two preliminary matters: (1) Jones' Motion to Strike Defendant's Summary

Judgment Evidence and (2) whether the facts in Defendant's Motion for Summary Judgment should be admitted.

### (1) Jones' Motion to Strike Defendant's Summary Judgment Evidence is Denied

On October 14, 2013, Jones filed a Motion to Strike Defendant's Summary Judgment Evidence (Doc. 64).  Specifically, Jones asks the Court to strike Exhibits 1-7, 9-15, 17-36, 38-46, 48-50, 52, 53, and 55-69 to Defendant's Memorandum in Support of Its Motion for Summary Judgment (Doc. 19) because, she argues, the Exhibits are not authenticated.  Jones makes no argument about *why* the challenged Exhibits are unauthenticated, nor does she assert any specific claims challenging their authenticity.

It is well settled that a Court can consider only admissible evidence in reviewing a motion for summary judgment.  Fed R. Civ. P. 56(c)(2); *see Law Co., Inc. v. Mohawk Constr. and Supply Co., Inc.*, 577 F.3d 1164, 1170 (10th Cir. 2009).  "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  Evidence may be authenticated by the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."  *Id.* at 901(a)(4); *Law Co.*, 577 F.3d at 1171 (holding that the district court should have considered whether documents could be authenticated under Fed. R. Evid. 901(a)(4)).  A district court should consider authentication of each piece of evidence individually.  *Law Co.*, 577 F.3d at 1171.

Defendant's summary judgment evidence consists of witness affidavits (Exhibits 8, 9, 16, 33, 51, 54, 70) and documentary evidence (Exhibits 1-7, 10-15, 17-32. 34-50, 52, 53, 55-69).  After examining the documentary evidence, the Court finds that the circumstantial evidence suggests that the documents are what they purport to be and will therefore consider them in deciding

4

defendant's motion.  Fed. R. Evid. 901(a)(4); *see Bhandari v. VHA Southwest Comm. Health Corp.*, No. 09-0932, 2011 WL 1336512, at *4 n.2 (D.N.M. Mar. 30, 2011).  Many of the challenged documents are on EEO office letterhead or signed by Jones.  Furthermore, Jones attached many of these same allegedly unauthenticated documents to her two Opposition motions (Docs. 37 and 58), and she makes no allegation there that the evidence is fake or not what defendant claims it to be.  Because there is sufficient circumstantial evidence to support the documents' authenticity, the Court denies Jones' Motion to Strike Defendant's Summary Judgment Evidence (Doc. 64).

### (2) Facts in Defendant's Motion for Summary Judgment are Deemed Admitted

Defendant filed its Motion to Dismiss or, in the alternative, for Summary Judgment (Doc. 18) on April 1, 2013.  Jones filed her first Opposition to Defendant's Motion (Doc. 37) on July 11, 2013, but the Court struck it from the record because Jones' blanket statement that "Facts 1-243" in defendant's motion "are disputed"[4] did not comply with D. Kan. Rule 56.1.  D. Kan. Rule 56.1(b) provides that:

> (1) A memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists.  Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed.

Moreover, "[a]ll material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."  D. Kan. Rule 56.1(b).

Because Jones is proceeding pro se, Judge Vratil allowed her to revise her response to comply with court rules.  Judge Vratil specifically warned Jones that "pursuant to D. Kan.

---

[4] Doc. 37 at 1 (Plaintiff's Stricken Memorandum in Opposition).

56.1(a), all material [] facts set forth in defendant's statement will be deemed admitted unless specifically controverted by plaintiff in accordance with D. Kan. Rule 56.1(b) and (d)."[5]

Jones refiled her Opposition brief on September 10, 2013 (Doc. 58), but it still does not set forth the specific paragraphs in defendant's memorandum that she disputes or specifically contradicts defendant's factual assertions with reference to those portions of the record upon which she relies. Jones states only that "[s]ummary judgment is improper in this case because there are genuine disputes of material fact on each element of plaintiff's claim for employment discrimination ...."[6] Accordingly, under D. Kan. Rule 56.1(a) and (b), the Court accepts defendant's factual statements—which are adequately supported by record evidence—as true. But, the Court will not automatically grant defendant's motion for summary judgment for failure to comport with the local rules. Rather, the Court will base its determination on defendant's statement of uncontroverted facts and the record as a whole.

## C. Analysis

The Court now turns to the merits of Defendant's Motion for Summary Judgment on the claims brought in Jones' First Formal EEO Complaint.

### (1) Legal Standard

In her First Formal EEO Complaint, Jones claims that defendant discriminated against her on the basis of her race and sex and retaliated against her for contacting defendant's EEO office. Thus, the claims in Jones' original First EEO Complaint are limited to Title VII only.[7]

A Title VII claim can be proven by direct or indirect evidence. *Hysten v. Burlington N. and Santa Fe Ry. Co.*, 296 F.3d 1177, 1180 (10th Cir. 2002). Because there is no direct evidence

---

[5] Doc. 38 at 2 (Order).

[6] Doc. 58 at 1 (Plaintiff's Memorandum in Opposition).

[7] Jones amended her First Formal EEO Complaint to add ADA and ADEA claims; the Court will address the amended claims in Section III below.

of discrimination here, the Court reviews the evidence under the *McDonnell Douglas* burden-shifting framework. *Id.* When, as here, discrete acts of discrimination are alleged, a plaintiff makes a prima facie case by showing: (1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Id.* If the plaintiff meets this burden, then the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant makes such a showing, the burden shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretextual. *Id.*

The same analysis applies to Title VII retaliation claims; a plaintiff must prove a violation either by direct evidence of discrimination or under the *McDonnell Douglas* burden-shifting framework. *Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014). Where, as here, there is no direct evidence of retaliation, plaintiff must first establish a prima facie case of retaliation by showing that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between her protected activity and the adverse employment action. *Id.* "The Supreme Court has recently clarified the causation standard for Title VII retaliation claims, explaining: '[A] plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.'" *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013)).

Jones' discrimination and retaliation claims all require Jones to prove she suffered an adverse employment action. An adverse employment action is one that is "materially adverse" to the employee's job status. *See Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir.

2009).  An action that is a "mere inconvenience or an alteration of job responsibilities" is not materially adverse to employment status.  *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000).  To constitute an adverse employment action, the employer's action must result in a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different job responsibilities, or a decision causing a significant change in benefits."  *Faragalla v. Douglas Cnty. Sch. Dist. RE 1*, 411 F. App'x 140, 156 (10th Cir. 2011).

A materially adverse action for retaliation is broader than an adverse action for discrimination purposes.  For an action to be materially adverse it must be sufficient to "dissuade a reasonable worker from making or supporting a charge of discrimination."  *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012).  "This requires injury rising to a level of seriousness."  *Id.*  "While the employer's conduct need not affect the terms and conditions of employment, the inquiry is an objective one, and not based on a plaintiff's personal feelings."  *Id.*

### (2) Alleged Acts of Discrimination

**i.  March 9, 2007: Major Self told Jones that a subordinate felt threatened by her and that other complaints had been made against her**

Jones worked as a civilian Operations Specialist for defendant at Fort Leavenworth.  Initially (and, it turns out, mistakenly), Jones had supervisory authority over two SGS CAC employees, Laura Estes and Lori Ausbrook.  In late February and early March of 2007, Major Suzanne Self, one of Jones' supervisors, received several complaints about Jones' treatment of Estes and Ausbrook.  The complaints came directly from Estes and Ausbrook, but also from other employees, and accused Jones of threatening, bullying, and intimidating her subordinates.  Self met with Jones on March 9, 2007 to discuss the complaints and give her a chance to address them.

Jones claims that defendant discriminated against her on the basis of her race and sex because Self told Jones at the meeting that a subordinate felt threatened by her and that other negative comments had been made about her.  Jones did not receive any disciplinary action based on the March 9, 2007 meeting, nor was her job affected in any way by it.  As a result, Jones cannot establish a "materially adverse" employment action based on the March 9, 2007 meeting, and the Court finds that this incident does not rise to the level of actionable discrimination under Title VII.

ii.   **March 14 and 20, 2007: Jones met with her supervisors and Estes and Ausbrook, during which false allegations were made against her**

In a further effort to resolve the tension that had developed between Jones and Estes and Ausbrook, Self scheduled meetings to discuss what Self believed to be misunderstandings between the employees.  On March 14, 2007, Jones, Estes, Self, and Captain Christian Nafziger, Jones' direct supervisor, met for two and a half hours.  Jones came to believe that the purpose of the meeting was to appease Estes, a white female, and make an example of Jones.  On March 20, 2007, Jones, Self, Nafziger, and Ausbrook met to address Ausbrook's concerns about Jones. Jones alleges that Ausbrook made false allegations against her during the meeting.  Management took no action against Jones based on either meeting.

Jones believes that defendant discriminated against her on the basis of her race and sex because she did not like sitting in the meeting with her subordinates and supervisor being accused of wrongdoing.  Jones alleges that her subordinates made false allegations against her. However, Jones does not claim that these false allegations were made on the basis of a protected class characteristic.  Any animus unrelated to Jones' protected class characteristic, such as personality conflicts with Estes and Ausbrook, is not evidence of improper discrimination.  *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1406 (10th Cir. 1997).  The law is clear that "not every-

9

thing that makes an employee unhappy is an actionable adverse action." *Anderson v. Clovis Mun. Sch.*, 265 F. App'x 699, 704 (10th Cir. 2008).  Furthermore, the March 14 and March 20, 2007 meetings were not "materially adverse" employment actions—they were not significant changes in Jones' employment status.  The Court finds that these incidents do not rise to the level of actionable discrimination under Title VII.

### iii.   March 19, 2007: Defendant changed Jones' job description to remove her supervisory duties

On March 19, 2007, Nafziger and Self met with Jones to tell her that her position description was being modified to remove her supervisory responsibilities.  Earlier in the month, before Self met with Jones to discuss the complaints made against her, a CAC Resource Management Officer told Self that the general rule in the Army is that an employee should have 10-15 subordinates before they are classified as a supervisor.  Jones had only two subordinates, and her position description clearly stated that she was an "Operations Specialist" rather than a "Supervising Operations Specialist."  After verifying that revisions to Jones' position description would not adversely affect Jones' title, series grade, or pay, Nafziger and Self submitted changes to Jones' position description.

Jones claims that she was discriminated against when her supervisory duties were removed from her position description.  Even if the Court assumes that the job change states a prima facie case for discrimination, defendant has articulated a legitimate, non-discriminatory reason for its action.  Defendant learned that to be classified as a "supervisor," an employee needed to have at least 10-15 subordinates.  Because Jones had only two subordinates, she could no longer be classified as a supervisor.  The burden then shifts back to Jones to establish that one of her protected class characteristics was a determinative factor in the employment decision or that defendant's reason for its action was merely pretextual.  Jones fails to submit any evidence estab-

lishing either option, so the Court finds that this incident does not rise to the level of actionable discrimination under Title VII.

### iv.   April 23, 2007: Jones was not included in an email announcement regarding the supply room lock combination

On April 23, 2007, Staff Sergeant Jeremy Allen, the CAC Headquarters Commandant, sent an email containing a revised supply room lock combination to various SGS personnel. Jones was not included in the email.  In addition, Allen left two other employees off of the email. Allen did not intend to leave Jones off of the email—he said it was a "slip of the mind."  Jones admits that it is "absolutely possible" that Allen left her off of the email by accident.

Accidentally leaving an employee off of a single email is not a "materially adverse" employment action, so this incident does not rise to the level of actionable discrimination under Title VII.

### v.   April 24, 2007: Defendant changed Jones' duty hours

On April 23 and 24, 2007, Nafziger told Jones that Jones, Estes, and Ausbrook needed to "deconflict" schedules and identify an established lunch time and general schedule.  Jones informed Nafziger that she would like to continue her then existing schedule of 7:30 am to 5:00 pm.  Nafziger responded by saying, "I prefer you have and establish a 40-hour work week.  I don't expect that it's fair to allow you to work more than 40 hours."  During this discussion, Nafziger informed Jones that she was being disrespectful towards him.  However, Nafziger did not give Jones disciplinary counseling for her conduct during the meeting.

Jones alleges that defendant discriminated and retaliated against her when it changed her duty hours.  Even if the Court assumes that limiting Jones' work schedule to a 40-hour week is an adverse employment action, Jones has not met her burden of establishing that the change occurred under circumstances giving rise to an inference of discrimination.  The date of the sched-

ule change was made before Self was informed that Jones had contacted the EEO office, so she set forth no facts to suggest the decision was retaliatory.  Finally, defendant has articulated a legitimate, non-discriminatory reason for the change:  defendant limited Jones' schedule because it was unfair to allow her to work extra hours.  Jones makes no attempt to rebut defendant's rationale.  For those reasons, this incident does not rise to the level of actionable discrimination or retaliation under Title VII.

### vi.     April 25, 2007: Defendant's Office of the Inspector General forced Jones to speak to it

Self sought assistance from various Fort Leavenworth subject matter experts, including defendant's Office of the Inspector General, to develop a plan to improve the unhealthy atmosphere that had developed between Jones and Estes and Ausbrook.  Self did not ask the IG to take action; she simply looked to him for guidance.  Jones concedes that Self contacted the IG only to work towards a cohesive office environment between Jones and her subordinates.  IG officials eventually contacted Jones to hear her side of the story.

Jones alleges that she suffered harm because speaking to the IG made her feel uncomfortable.  As a matter of law, Jones' discomfort with speaking to the IG does not rise to the level of an adverse employment action.  Petty slights, minor annoyances, and uncomfortable situations are not actionable under employment discrimination law.  *See Jones v. Wichita State Univ.*, 528 F. Supp. 2d 1182, 1193 (D. Kan. 2007).  In addition, Jones cannot show that defendant's conduct was retaliatory because on April 25, 2007, defendant did not know that Jones had initiated EEO complaint proceedings.  Thus, this incident does not rise to the level of actionable discrimination or retaliation under Title VII.

12

**vii.    May 1, 2007: Nafziger denied Jones' request to take lunch at the end of the day and to work out**

In February of 2007, Self authorized all CAC employees to participate in a physical fitness program to promote health throughout the organization.  Under the program, each employee was allowed to take one hour for physical fitness training per day.  In late April 2007, Self learned that the program she had authorized did not adhere to Fort Leavenworth's approved Civilian Health and Fitness Program.  As a result, Self suspended the program between May 2, 2007 and May 18, 2007, while a program in compliance with Fort Leavenworth's policies went through a legal review.

On May 1, 2007 at 2:25 p.m., Jones sent Nafziger an email telling him that she had not taken her lunch break and would be leaving early to eat lunch and also to work out.  Nafziger had not received a request to combine lunch and physical fitness training at the end of the day from anyone else in the office.  As a result, Nafziger consulted with another employee to determine if that was allowed.  The employee referred Nafziger to the Supervisor's Handbook, which stated that employees could not shorten their work day by working through lunch.  Moreover, an employee's lunch had to be taken between the hours of 11:00 a.m. and 1:30 p.m.

After not hearing from Nafziger, Jones asked Nafziger if he had gotten her email and if he had any problems with her plan to leave early.  Nafziger told her that he received the email, he had problems with it, and he was trying to figure out how to respond.  At 3:33 p.m., Jones sent a second email and asked Nafziger what his concerns were.  At 3:45 p.m., Nafziger told Jones that because the Handbook prohibited employees from taking lunch at the end of the day, he could not let Jones leave early.  He also told Jones that she could not leave early to go to physical fitness training because he suspected that she was not using the time to work out and she had not submitted her duty schedule specifying the time she wished to leave.  Nafziger ap-

13

proached Jones and attempted to show her the portion of the Handbook that prevented her from leaving early.  As Nafziger began to explain, Jones took the Handbook from him, turned around in the middle of the conversation, and walked away to make copies.  Jones copied the relevant paragraph and underlined it.

When Jones returned, Nafziger asked her if they could talk in Self's office about the incident that had just occurred.  Jones told him that she did not feel comfortable talking to him one-on-one behind closed doors, so Nafziger told her that she could bring someone to the meeting.  Jones could not find anyone to attend with her, and she left the office at 4:30 pm.

Jones claims that the decisions to deny her requests to take her lunch and to work out were discriminatory and retaliatory.  The Court finds that neither decision was a "materially adverse" employment action—she suffered no significant change in employment status.  On May 2, Self suspended the physical fitness program for all employees, not just Jones, because it violated Fort Leavenworth policy.  Furthermore, defendant has met its burden to show that there was a legitimate, non-discriminatory reason for the decision to deny plaintiff's request to take a late lunch break.  The Supervisor's Handbook prohibits an employee from leaving early to take a lunch break.  The burden then shifts back to Jones to show that defendant's stated reason is pretextual, but she makes no attempt to do so.  Finally, Jones cannot show that defendant's conduct was retaliatory because defendant did not know that Jones had contacted the EEO office until May 17, 2007.  Thus, these incidents do not rise to the level of actionable discrimination or retaliation under Title VII.

**viii.    Starting on May 2, 2007: Nafziger accused Jones of being disrespectful on three occasions**

Starting on May 2, 2007, and continuing throughout the week, Nafziger asked Jones to meet with him to discuss the dispute that started when Nafziger denied her request to take lunch

14

at the end of the day.  Jones responded via email on May 3, 2007, requesting that Nafziger tell her the purpose and proposed outcome of the meeting.  She asked that Nafziger respond to her via email.  Nafziger approached Jones in the hall and told her that he was going to talk to her because he was her supervisor.  Jones began to walk away from him, and Nafziger told Jones she was being disrespectful.  Nafziger took no formal disciplinary action against Jones based on this incident.

On May 4, 2007, Nafziger asked Jones if she had picked a time to meet.  Jones responded that she had sent him an email.  At that point, Nafziger adopted a harsh tone of voice and told her that he was not responding to an email because his desk sits just two feet away from hers. Nafziger then informed Jones that the meeting would begin at 1:40 p.m. and that he expected her to attend.  Jones walked away and gave the "surrender motion," at which point Nafziger told her that she was being disrespectful.  Nafziger took no formal disciplinary action against Jones for this incident.

On May 9, 2007, Nafziger, Jones, and another employee, met to discuss Nafziger's perception that Jones had been disrespectful to him.

Jones alleges that she was accused of being disrespectful between May 2 and May 9, in retaliation for contacting the EEO office.  However, defendant did not learn that Jones had initiated complaint proceedings until May 17, 2007, after the alleged retaliation occurred.  Thus, Jones has not established a causal connection between Nafziger's actions and the EEO proceedings.  These incidents do not rise to the level of actionable retaliation under Title VII.

### ix.   Between April 24 and June 7, 2007: Jones suffered various insults

On April 24, 2007, Ausbrook accused Jones of not coordinating with Estes for lunch and office coverage, and Self did nothing to intervene.  On May 18, 2007, Nafziger scolded Jones

after she told Estes to "chill out" when Estes tried to get a document from Jones.  In June 2007, Nafziger embarrassed Jones by accusing her of wrongdoing in front of co-workers and accusing her of not doing what she was told to do.  On June 7, 2007, Jones copied Nafziger and Self on an email accusing Estes of being rude to Jones.  Self replied that Nafziger would respond to the incident.  On July 19, 2007, Jones found a memo from Nafziger dated June 29, 2007 that accused Jones of using a religious oath that might be offensive to some in the workplace.  On August 3, 2007, Nafziger accused Jones of lying.[8]

Jones claims that these insults were based on her sex and religion and were retaliation for her filing a claim with the EEO office.  However, none of those insults constitute "materially adverse" employment actions—she suffered no significant change in employment status from mere "insults."  *See Jones*, 528 F. Supp. 2d at 1193.  Jones pleads no facts to show that the "insults" were related causally to Jones' prior EEO activity, her race, or her gender.  As a result, these incidents do not rise to the level of actionable discrimination or retaliation under Title VII.

**x.    Jones claims she was subjected to a hostile work environment**

Jones claims that the discriminatory and retaliatory events she alleges in her First Formal EEO Complaint created a hostile or abusive work environment.  To establish a claim for hostile work environment, Jones must show that "under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privileges of employment and (2) the harassment was based upon some protected characteristic.  *See Robinson v. Cavalry Portfolio Servs., LLC*, 365 F. App'x 104, 118 (10th Cir. 2010).  The Court views the severity of harassment from the perspective of a reasonable person in Jones' position, considering all of the circumstances.  *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007).  The circumstances include the frequency of the conduct, its severity, whether it is physically threatening or

---

[8] The July 29 and August 3, 2007 claims were added after Jones filed her First Formal EEO Complaint.

humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Id.*

The Court finds that, even when viewing the foregoing facts in the light most favorable to Jones, the evidence reveals at most an unpleasant work environment. Furthermore, Jones has failed to show that any harassment that may have occurred was based on a protected characteristic—defendant has provided legitimate, nondiscriminatory reasons for the actions Jones claims are discriminatory, and Jones provided no evidence to rebut those reasons. *See Robinson*, 365 F. App'x at 120 ("Without discriminatory overtones, discourteous treatment is simply not sufficient to impose liability under Title VII."). As a result, the Court finds that defendant did not experience a hostile work environment under Title VII.

### III.  Amended Claims to First Formal EEO Complaint

While the EEO office investigated her initial claims, Jones amended her original complaint to add four allegations of discrimination that occurred between May 1 and June 7, 2007. Jones alleges that:  (1) on May 1, 2007, management treated her harshly when she asked for assistance; (2) on or about May 8, 2007, management treated her harshly when she voiced opposition to the retaliation and hostile work environment to which she was being subjected; (3) on June 7, 2007, when she returned to work after a leave of absence, her office had been ransacked, her plants had been destroyed, items had been removed from a box in her office, and the box was left on the floor; and (4) on June 7, 2007, Self wrongly accused her of falsifying her time card. For these incidents, Jones claims that defendant discriminated against her in violation of Title VII, the ADEA, and the ADA.  Defendant argues that these claims must be dismissed because Jones failed to exhaust her administrative remedies.

### A.  Exhaustion of Remedies

Exhaustion of administrative remedies is a jurisdictional prerequisite to instituting an ac-
tion in federal court under Title VII, the ADA, and the ADEA.  *Shikles v. Sprint/United Mgmt.
Co.*, 426 F.3d 1304, 1309, 1311 (10th Cir. 2005).  Federal employees who wish to bring Title
VII, ADA, and ADEA claims "must consult [an Equal Employment Office (EEO)] Counselor
prior to filing a complaint in order to try to informally resolve the matter."  29 C.F.R.
§ 1614.105(a).  After attempting to resolve the claim informally, a claimant must file a formal
charge with the agency's EEO office before filing a civil action.  29 C.F.R. § 1614.106.[9]

The exhaustion requirements give the agency the information it needs to investigate and
resolve the dispute between the employee and the employer.  *Khader v. Aspin*, 1 F.3d 968, 971
(10th Cir. 1993).  "Good faith effort by the employee to cooperate with the agency and the
EEOC and to provide all relevant available information is all that exhaustion requires."  *Id.*
Conversely, when a complainant refuses or fails to provide the agency information sufficient to
evaluate the merits of the claim, she cannot be deemed to have exhausted administrative reme-
dies.  *Id.*  However, "[i]t is only when a plaintiff's non-cooperation effectively prevents the
EEOC's investigation and conclusion efforts such that the EEOC proceeding essentially becomes
a sham or meaningless proceeding that a charging party's non-cooperation will amount to a fail-
ure to exhaust administrative remedies."  *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304,
1311 (10th Cir. 2005).

A plaintiff bears the burden of establishing that she administratively exhausted her
claims.  *Mayberry v. Johnson*, No. 06-2575, 2008 WL 4304979, at *3 (D. Kan. Sept. 18, 2008)

---

[9] As an alternative to the complaint procedure under 29 C.F.R. § 1614.105, a plaintiff may file an ADEA
claim "against the head of an alleged discriminating agency after giving the [EEOC] not less than 30
days' notice of the intent to file such an action."  29 C.F.R. § 1614.201(a).  Jones has provided no evi-
dence she complied with this procedure.

(citing *Showalter v. Weinstein*, No. 05-1247, 2007 WL 1241630, at *4 (10th Cir. Apr. 30, 2007)).
Because exhaustion of remedies is a jurisdictional prerequisite, a Court must dismiss unexhaust-
ed Title VII, ADEA, and ADA claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter
jurisdiction.  *Shikles*, 426 F.3d at 1317.

   **B.  Analysis**

       On November 18, 2010, the EEO office asked the Department of Defense Investigations
and Resolutions Division ("IRD") to hold a Supplemental Fact-Finding conference to address
Jones' amended claims.  The IRD set the Supplemental Fact-Finding Conference for February
16, 2011, but Jones did not attend.  On the date of the hearing, the IRD Investigator contacted
Jones to ask why she had not arrived.  Jones did not give a reason and hung up the phone prior to
completing the conversation.

       Because Jones did not participate in the Supplemental Fact-Finding Conference, she did
not provide defendant's EEO office with all of the information it needed to resolve her dispute.
*Khader v. Aspin*, 1 F.3d 968, 971 (10th Cir. 1993).  Thus, Jones failed to exhaust her administra-
tive remedies with her First Amended EEO Complaint.  Indeed, defendant has no knowledge of
Jones' claim that on May 1 management treated her harshly when she asked for assistance.
Jones' refusal to participate in the Supplemental Fact-Finding Conference deprived the EEO of-
fice of the information it needed to resolve the dispute.  Even considering her pro se status, the
Court finds that Jones' willful refusal to participate in the administrative process did not exhaust
her administrative remedies.  *Accord Austin v. Winter*, 286 F. App'x 31, 37 (4th Cir. 2008) (hold-
ing that the plaintiff's refusal to participate in the fact-finding conference was a failure to exhaust
her administrative remedies); *Johnson v. Bergland*, 614 F.2d 415, 417 (5th Cir. 1980) (conclud-
ing that the plaintiff's failure to supply the agency with information sufficiently specific to ena-

ble it to conduct a meaningful investigation caused the Court to find the plaintiff failed to exhaust his administrative remedies).  As a result, the Court dismisses the claims added to Jones' First Formal EEO Complaint under Fed. R. Civ. P. 12(b)(1).

### IV.  Second EEO Complaint

Jones filed a Second Formal EEO Complaint on October 16, 2009, alleging that defendant discriminated against her in violation of Title VII, the ADA, and the ADEA.  On January 29, 2010, Jones' representative[10] sent an email to defendant's EEO office asking that the agency respond to the complaint.  On February 23, 2010, the EEO investigator requested additional information from Jones about her claims, and Jones replied on March 11, 2010.

The March 11, 2010 response was the last time that Jones cooperated with the EEO administrative process about her Second EEO Complaint.  The EEO investigator notified the parties that a Fact-Finding Conference would start on October 18, 2010, at 8:00 a.m., but neither Jones nor her representative came to the meeting.  At 8:20 a.m. on October 18, the EEO investigator contacted Jones to ask where she was, but Jones said she did not know the Fact-Finding Conference was scheduled for that day and was not going to attend.  Jones never showed up, so the investigator sent Jones an email instructing her to complete an attached declaration stating her allegations.  Jones never completed the declaration.  On April 25, 2011, defendant sent Jones its First Request for Discovery, which Jones received the same day.  After Jones failed to respond to the discovery, defendant filed a motion to compel Jones to respond to its discovery requests.  On June 8, 2011, the presiding administrative law judge ordered Jones to respond to defendant's discovery within 10 days, but Jones never did so.  On June 29, 2011, after more than

---

[10] Jones was apparently provided a representative by her union to help with the administrative complaint process.

two months with no responses from Jones, the administrative law judge dismissed Jones' com-

plaint, and the EEO entered a Final Agency Action finding no discrimination.

Jones refused to attend the independent fact-finding investigation for the claims asserted

in her Second Formal EEO Complaint, and she refused to respond to defendant's discovery re-

quests about the claims she brought against it.  Thus, Jones failed to exhaust her administrative

remedies.  *See Shikles*, 426 F.3d at 1317 (holding that the plaintiff failed to exhaust administra-

tive remedies because he refused to make himself available for an interview or provide the

EEOC with documents it requested).  Because exhaustion of administrative remedies is a juris-

dictional prerequisite to bringing a lawsuit in federal court under Title VII, the ADA, and the

ADEA, the Court dismisses the allegations in Jones' Second Formal EEO Complaint under Fed.

R. Civ. P. 12(b)(1).[11]

## V.  Third EEO Complaint

Jones initiated contact with defendant's EEO office a third time on February 17, 2011.

She alleges that defendant discriminated against her because of her race, color, sex, age, national

origin, religion, and disability.  Jones also alleges that defendant retaliated against her based on

her previous two EEO Complaints.  Specifically, Jones claimed that:  (1) on or about August

2008, defendant discriminated against her by selecting a handpicked, preselected, and less quali-

fied individual for a newly created position and (2) on January 3, 2011, defendant discriminated

against her by selecting a less qualified employee for an internal job opening.  Defendant argues

---

[11] In her Reply to Defendant's Motion for Summary Judgment (Doc. 58), Jones alleges that she was "as-
saulted by employees" (*Id.* at ¶ 7) on two occasions and attaches the police reports she gave about the in-
cidents.  First, she accused Martin Klein, a CAC employee, of assaulting her.  Jones included this allega-
tion in her Second Formal EEO Complaint which the Court dismisses because Jones failed to exhaust her
administrative remedies.  Jones also accused Ausbrook of assaulting her, but she did not include that
claim in any EEO proceeding and therefore failed to exhaust her administrative remedies there as well.

that the claims asserted in Jones' Third Formal EEO Complaint must be dismissed because Jones failed to file them within applicable time limits.

As a federal employee, Jones must bring a complaint of discrimination to the attention of an EEO counselor within 45 days of the occurrence or conduct giving rise to the complaint. 29 C.F.R. § 1614.105(a)(1). The EEO office is required to extend the 45-day time limit if the complainant shows that she was not notified or otherwise aware of the time limits, that she did not know or should have known that the discrimination had occurred, or for other reasons considered sufficient by the EEO office. 29 C.F.R. § 1614.105(a)(2).

Jones contacted an EEO Counselor about the August 2008 hiring decision on February 17, 2011, more than two years after the discrimination allegedly occurred. Jones makes no attempt to show that the 45-day deadline should be extended pursuant to § 1614.105(a)(2). As a result, Jones' August 2008 claim must be dismissed.[12]

In addition, both Jones' August 2008 and January 3, 2011 complaints are untimely because she did not appeal the EEO office's decision or file a civil action within the time limits prescribed by regulation. A complainant may appeal an agency's dismissal of a complaint, but must do so within 30 days of receipt of the dismissal. 29 C.F.R. §§ 1614.401(a), 1614.402(a). Alternatively, a complainant may file a civil action in a United States District Court within 90 days of receiving the final decision on an individual complaint if no appeal has been filed. 29 C.F.R. § 1614.407.

---

[12] The final EEO decision, issued on June 1, 2011, also dismissed Jones' claim that defendant discriminated against her on January 3, 2011 (when she was passed over for a position) for failing to comply with the 45-day deadline. However, the facts appear to be that Jones met the deadline; she made initial contact with the EEO office on February 17, 2011 to report discrimination that occurred on January 3, 2011. The EEO office apparently erred, but the January 3, 2011 discrimination claim is dismissed on other grounds as described below.

Jones received the EEO office's Final Agency Decision dismissing her Third Formal EEO Complaint on June 13, 2011, but did not appeal the agency's decision at all or file a civil action within 90 days of that date. Rather, she filed this lawsuit on October 19, 2012, well over a year past the 90-day deadline. Because Jones did not appeal the agency decision or initiate this lawsuit within the applicable time limits, the Court dismisses the claims she asserted in her Third Formal EEO Complaint. *See McCoin v. Sec'y of Veterans Affairs*, 132 F.3d 43, 1997 WL 780410, at *2 (10th Cir. Dec. 19, 1997) (unpublished table opinion); *Lohf v. Runyon*, 999 F. Supp. 1430, 1439 (D. Kan. 1998).

## VI.  Defendant's Motion to Strike Plaintiff's Surreply

On October 3, 2013, Jones filed Plaintiff's Reply to Defendant's Response to Summary Judgment (Doc. 61), which is essentially a surreply to Defendant's Response to Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment (Doc. 60). Defendant filed a Motion to Strike Plaintiff's Reply to Defendant's Response for Summary Judgment (Doc. 62) on October 11, 2013.

Defendant correctly points out surreplies are disfavored in the District of Kansas and that they are not permitted without leave of the Court. However, the Court will exercise its discretion and decline to strike Jones' surreply. The Court finds that the surreply has little or no bearing on Defendant's Motion to Dismiss and Motion for Summary Judgment—any attempts to create genuine fact issues are not supported by citations to the materials in the record and can be disregarded. Fed. R. Civ. P. 56(e). The Court denies Defendant's Motion to Strike Plaintiff's Reply to Defendant's Response for Summary Judgment.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment (Doc. 18) is granted.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Reply to Defendant's Response for Summary Judgment (Doc. 62) is denied.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Defendant's Summary Judgment Evidence (Doc. 64) is denied.

**IT IS SO ORDERED.**

**Dated this 8th day of July, 2014, at Topeka, Kansas**


**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**